IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

METROPCS WIRELESS, INC.,
Plaintiff                                          *
                                                   *
            v.                                     *            Civil No. JFM-11-501
                                                   *
COMMUNITY VOICE LINE, LLC,                         *
Defendant                                          *

******

MEMORANDUM

      Defendant (and former counterclaim plaintiff), Community Voice Line, LLC ("CVL"), is

a provider of free interactive services, such as conference calling and online radio broadcasting,

that can be accessed over the phone.  Plaintiff (and former counterclaim defendant), MetroPCS,

provides wireless communications services to retail customers on an unlimited, fixed-price basis,

subject to certain terms and conditions.  CVL initially filed suit in Iowa, alleging violations of

the Call Blocking Order issued by the Federal Communications Commission ("FCC") and of the

Communications Act of 1934, as amended, 47 U.S.C. §§ 201–202.  MetroPCS filed suit in the

District of Maryland, seeking declaratory relief that its actions do not violate the Call Blocking

Order or the Communications Act.  CVL's suit in Iowa was transferred to this court and

consolidated with MetroPCS's declaratory judgment claim.  Following denial of CVL's request

for a TRO and a subsequent request for primary jurisdiction referral to the FCC, CVL submitted

a motion for voluntary dismissal of its counterclaims with prejudice.  CVL's motion was granted,

but, although CVL contends that dismissal of the counterclaims mooted MetroPCS's claims for a

declaratory judgment, MetroPCS's claims were allowed to proceed.  MetroPCS has now filed a

motion for summary judgment on its declaratory judgment action.

The issues have been fully briefed, and no oral argument is necessary.  *See* Local Rule

105.6.  For the reasons that follow, MetroPCS's motion is granted as to its claims that its actions

do not violate the Call Blocking Order.  I dismiss Metro PCS's other claims, so that they can be

decided in due course by the FCC.

## I. Background

MetroPCS is a wireless communications provider that offers, subject to certain terms and

conditions, unlimited nationwide calling for a fixed price.  (MetroPCS Mot. Summ. J. at 9 ("Mot.

Summ. J."), ECF No. 61.)  MetroPCS customers who wish to call a long distance telephone

number excluded from the flat-rate service plan must use an alternative payment mechanism,

such as a prepaid calling card.  (*Id.*)  Unlike post-paid wireless providers, who bill customers in

arrears for usage in excess of the paid monthly allotment, MetroPCS customers who dial a phone

number outside of their pre-paid plan immediately receive an automated message that a calling

card is required.  (*Id.* at 10–11.)  Currently, less than 0.0000002% of domestic numbers in the

contiguous United States are subject to this alternative payment method.  (*Id.* at 11).  According

to MetroPCS, alternative payment is required for numbers whose connections subject MetroPCS

to unusually high costs due to the volume of traffic the number generates, average hold times

associated with calls to the number, and related termination charges to which MetroPCS is

subjected.  (*Id.*)  Each number included in the alternative payment category is reevaluated within

a relatively short period of time to determine whether aggregate use justifies continued inclusion

in the alternative payment list.  (*Id.*)  The MetroPCS terms and conditions disclose that certain

telephone numbers may require alternative payment, and the MetroPCS website includes a

search feature allowing customers to determine whether a particular number is on the alternative

payment list.  (*Id.* at 12.)

Community Voice Line, LLC ("CVL") provides interactive services, including news services and conference calling, throughout the United States. (CVL Answer ¶ 9, ECF No. 9.) CVL operates on a "traffic stimulation" or "traffic pumping" business model in which CVL has arrangements with various telephone companies known as local exchange carriers ("LECs"), which adopt high tariff rates for customers who are likely to deliver a significant number of lengthy calls to be terminated on the LEC's network. (Mot. Summ. J. at 13.) One such customer is AudioNow.com, which gives telephone subscribers the ability to listen to radio broadcasts from around the world. (CVL Mot. TRO Prelim. Inj. at 4 ("Mot. TRO"), ECF No.11-1.) To facilitate access to AudioNow.com radio broadcasts, Great Lakes Communication Corp. ("Great Lakes"), an LEC, assigned a group of phone numbers located in rural western Iowa to CVL. (Mot. Summ. J. at 13–14.) Pursuant to their agreement, Great Lakes pays a marketing fee to CVL for directing traffic to Great Lakes numbers, and CVL shares a portion of that revenue with AudioNow.com. (*Id*. at 14.)

Beginning in early January 2011, MetroPCS customers began experiencing problems connecting to AudioNow's broadcasts using CVL numbers in Iowa. (Mot. TRO at 5.) MetroPCS customers attempting to call these numbers received a message instructing them to enter a calling card number or to use another long-distance service to be connected. (*Id*.) CVL alleges that MetroPCS is blocking its customers' calls to these numbers and thereby directly and irreparably harming CVL's business. (*Id*.) MetroPCS counters that it has not "blocked" calls to any numbers, but rather has simply removed these numbers from its unlimited, flat-rate calling plan as it is entitled to do pursuant to its terms and conditions. (Mot. Summ. J. at 16.) MetroPCS further states, and CVL does not dispute, that these numbers can still be accessed on MetroPCS's network by using a calling card or other third-party payment mechanism. (*Id*.)

3

CVL filed suit against MetroPCS in the Northern District of Iowa on February 22, 2011. *Cmty. Voice Line, LLC v. MetroPCS Commc'ns, Inc.*, No. 5:11-cv-04019-MWB (N.D. Iowa Feb. 22, 2011).  CVL claimed that MetroPCS was engaged in unlawful call blocking and sought damages, a TRO, and a preliminary and permanent injunction.  (CVL Opp'n Summ. J. at 3 ("CVL Opp'n"), ECF No. 64.)  CVL alleged that MetroPCS was intentionally preventing long-distance plan subscribers from reaching telephone numbers in Iowa that connected callers to radio programming and interactive services CVL provides for its customers.  (*Id.*)  These actions, CVL contended, violate the Communications Act of 1934, as amended, 47 U.S.C. §§ 201–202, and contravene the FCC's order *Establishing Just and Reasonable Rates for Local Exchange Carriers; Call Blocking by Carriers*, 22 FCC Rcd. 11629 (2007) ("Call Blocking Order").  (*Id.*)  MetroPCS filed a complaint in the District of Maryland seeking a declaratory judgment that its actions were lawful.  (Mot. Summ. J. at 2.)  Because the Iowa court did not have personal jurisdiction over MetroPCS, that suit was transferred to this court and consolidated with the MetroPCS declaratory judgment action.  (*Id.*)

CVL renewed its motion for a TRO and preliminary injunction in the District of Maryland.  (CVL Opp'n at 2.)  After a hearing, the motion was denied.  (Order Den. Def.'s Mot. TRO, Mar. 8, 2011, ECF No. 28.)  CVL's subsequent motion to have the FCC assume primary jurisdiction over the case was also denied.  (Order Den. Def.'s Mot. Primary Jurisdiction, July 6, 2011, ECF No. 44.)  CVL then moved to voluntarily dismiss its claims with prejudice, expecting dismissal to moot MetroPCS's declaratory judgment claims.  (CVL Opp'n at 3.)  This court granted the motion to voluntarily dismiss but, as stated above, allowed MetroPCS's declaratory judgment claims to proceed.  (*Id.*)  Since that ruling, Great Lakes, acting through the same law firm and attorneys that represent CVL, has initiated a complaint against MetroPCS before the

FCC, raising the same claims on the same grounds asserted in the counterclaim here.  (Mot. Summ. J. at 4.)

MetroPCS contends that Great Lakes should be considered a party in interest to this proceedingand should be bound by the prior dismissal of CVL's claims.  (*Id*. at 5.) [1] Accordingly, MetroPCS asserts that it will request that the FCC dismiss Great Lakes's complaint and defer to this court's jurisdiction.  (*Id*. at 6.)  MetroPCS seeks a declaration from this court that (1) its alternative payment mechanism does not constitute call blocking under the FCC Call Blocking Order and that it is not a violation of §§ 201 and 202 of the Communications Act; (2) its practice of designating certain numbers as "Excessive Cost Numbers" is not in violation of the Call Blocking Order or of §§ 201 and 202 of the Communications Act; (3) MetroPCS is not unlawfully blocking calls from its users to telephone numbers assigned to CVL by Great Lakes, or any other party; and (4) MetroPCS is not obligated to deliver traffic to uncertified LEC Great Lakes.[2]  Now pending before the court is MetroPCS's motion for summary judgment as to its declaratory judgment claims.

---

[1] MetroPCS contends that CVL has disregarded court-approved discovery schedules and failed to respond to discovery requests, including those that probe the relationship between CVL and Great Lakes.  Rather than file a motion to compel, MetroPCS believes the record, as it stands, contains sufficient uncontested facts to support summary judgment.  (Mot. Summ. J. at 7.)

[2] MetroPCS's request for relief contains seven declaratory rulings it seeks from the court.  These requests are listed below. The fifth, sixth, and seventh requests seem redundant of the first four and will therefore not be considered separately.

> 1. The MetroPCS practice of requiring its customers to utilize an alternative payment mechanism, such as a MetroPCS-branded or third-party telephone calling card, to call certain long distance telephone numbers does not constitute: (a) unlawful or unreasonable call blocking in violation of *Establishing Just and Reasonable Rates for Local Exchange Carriers; Call Blocking by Carriers*, 22 FCC Rcd 11629 (2007) (the "*Call Blocking Order*"); (b) a violation of Section 201 of the Communications Act; or (c) a violation of Section 202 of the Communications Act.
>
> 2. The MetroPCS practice of designating certain telephone numbers as "Excessive Cost Numbers" using objective, non-content based criteria designed to identify

## II. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that a party may seek summary judgment on each claim or defense or part thereof.  Summary judgment should be rendered when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Whether a fact is material depends on the substantive law.  *See id.*

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met that burden, the non-moving party must demonstrate that

---

numbers that are subjecting MetroPCS to abnormally high costs based upon the volume of calls the number is generating, the average hold times associated with calls and the related termination charges, and requiring its customers to utilize an alternative payment mechanism, such as a MetroPCS or third-party telephone calling card, to call these numbers, does not constitute: (a) unlawful or unreasonable call blocking in violation of the *Call Blocking Order*; (b) a violation of Section 201 of the Communications Act; or (c) a violation of Section 202 of the Communications Act.
3. MetroPCS is not unlawfully blocking calls from its users to telephone numbers assigned to CVL by Great Lakes, or any other party.
4. MetroPCS is not obligated to deliver traffic to uncertificated CLEC Great Lakes.
5. MetroPCS has not violated 47 U.S.C. § 201.
6. MetroPCS has not violated 47 U.S.C. § 202.
7. MetroPCS has not violated the FCC's decision in the *Call Blocking Order*.
Mot. Summ. J. at 32–33.

such an issue does, in fact, exist. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)); *see also Rivanna Trawlers Unltd. v. Thompson Trawlers*, *Inc.,* 840 F.2d 236, 240 (4th Cir. 1988). The court generally must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 377 (2007).

### III. Jurisdiction

CVL contends that this court lacks the authority to provide the declaratory relief MetroPCS seeks because the Declaratory Judgment Act cannot alone confer federal subject matter jurisdiction. (CVL Opp'n at 4.) Indeed, "it is well-settled that the Declaratory Judgment Act does not independently create jurisdiction. When a plaintiff has a legal claim under federal law, the Declaratory Judgment Act allows him to obtain a federal court declaration of his rights under that federal statute. But, absent that independent legal right, the Declaratory Judgment Act does not confer jurisdiction." *Univ. Gardens Apartments Joint Venture v. Johnson*, 419 F. Supp. 2d 733, 742 (D. Md. 2006).

CVL maintains that MetroPCS alleges jurisdiction arising under the Communications Act, which provides a private right of action only for those seeking damages because they claim to have been injured by a common carrier. (*Id.* at 5.) Because MetroPCS does not claim to have suffered such an injury or to be seeking damages, CVL contends that the Communications Act cannot be a basis for jurisdiction. It points to *North Cnty. Commc'ns Corp. v. Cal. Catalog & Tech.*, 594 F.3d 1149 (9th Cir. 2010), to support this contention. In *California Catalog*, the

plaintiff argued that the court had jurisdiction under the Declaratory Judgment Act because the

Communications Act provided a private right of action.  *Cal. Catalog*, 594 F.3d at 1155.  The

Ninth Circuit dismissed the claim for declaratory relief arising under § 201(b) of the

Communications Act because, without a predicate FCC ruling on the lawfulness of the

underlying activity, there was no private right of action under § 207.  *Id*. at 1156.  Because the

FCC had issued no such ruling, the court held that the Declaratory Judgment Act alone could not

serve as the basis for jurisdiction over the claim. *Id*. at 1160.

      Unlike the *California Catalog* plaintiff, MetroPCS does not cite the Communications Act

as a direct basis for this court's jurisdiction.  Rather, it contends that this court has jurisdiction

over the declaratory claim under 28 U.S.C. § 1332 because the case involves citizens of different

states and an amount in controversy exceeding $75,000, per CVL's own calculation of its losses

and potential losses due to MetroPCS's alternative payment mechanism.  This contention is

meritorious.  Diversity jurisdiction therefore provides the independent basis for the court to

consider declaratory relief.

      In addition to challenging the basis for this court's jurisdiction, CVL contends (as it

contended when asking this court to refer the case to the FCC under the primary jurisdiction

doctrine) that the court lacks the authority to determine whether MetroPCS's actions violate the

Communications Act.  The Communications Act gives the FCC responsibility to regulate

communications carriers "so as to make available, so far as possible, to all people of the United

States . . . a rapid, efficient, nation-wide, and world-wide wire and radio communications service

. . . ." 47 U.S.C. § 151.  In accordance with this mandate, the FCC has adopted a prohibition on

call blocking, including a prohibition on carriers' engaging in "self-help by blocking traffic to

LECs."  Call Blocking Order at ¶¶ 1, 5–6.  Reduced to their essentials, the questions raised in

MetroPCS's request for declaratory judgment are whether its practice of excluding certain numbers from its flat-rate plans constitutes unlawful call blocking in violation of the Call Blocking Order or in violation of §§ 201 and 202 of the Communications Act.  To the extent that it is possible to answer these questions by straightforward interpretation of the FCC Call Blocking Order, without resort to complex and far-reaching policy issues, this court is competent to resolve the claim.  *See Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172–73 (9th Cir. 2002).  Other issues, however, though properly before the court, may fall within the special competence of the administrative agency and may therefore properly be referred to the agency under the prudential doctrine of primary jurisdiction.  *See Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 268 F.3d 255, 262 n.7 (4th Cir. 2001);  *In re Bulldog Trucking, Inc.*, 66 F.3d 1390, 1399–1400 (4th Cir. 1995).

## IV. Analysis

### A.  FCC Call Blocking Order

The Call Blocking Order states that "no carriers, including interexchange carriers, may block, choke, reduce or restrict traffic in any way."  Call Blocking Order at ¶ 6.  CVL contends that MetroPCS's practice of requiring an alternative payment mechanism for certain numbers is precisely the "call blocking" the FCC sought to prohibit.  MetroPCS argues that the prohibition on call blocking extends only to those situations in which a customer is entirely precluded from using the carrier's network to complete a call, rather than merely having to submit to different payment methods.  (Mot. Summ. J. at 23.)  According to MetroPCS, its customers are always permitted to access CVL's numbers via the MetroPCS network, even if the specific number is not included in the flat-rate plan, by using a calling card.  (*Id.* at 23–24.)  Accordingly,

MetroPCS seeks a declaration from this court that its actions do not violate the Call Blocking Order.

Since issuing its initial Call Blocking Order, the FCC has elaborated that the call blocking, reducing, restricting, and choking it sought to preclude involved calls not reaching their destinations or suffering from poor call quality. *Establishing Just and Reasonable Rates for Local Exchange Carriers; Call Blocking by Carriers*, CC Docket No. 01-92, WC Docket No. 07-135 Declaratory Ruling, DA 12-154 (rel. Feb 6, 2012) ("Declaratory Ruling")). The examples cited in the Declaratory Ruling include instances of calls being re-routed or looped between providers; ringing eight to ten times on the caller's side before ringing, if at all, on the receiver's side; and false or misleading recorded messages indicating that the call could not go through as dialed, giving the impression that the problem was with the receiving phone number. *Declaratory Ruling* at ¶ 6.

The undisputed facts in the record establish that MetroPCS has not engaged in any of the above-listed prohibited practices. Calls to numbers not included in the flat-rate plan have not been described as failing to connect or suffering from delay due to excessive ringing or looping. The caller receives a truthful recorded message indicating that alternative payment is required, and once such payment is rendered, the call is completed on MetroPCS's network without issue. Moreover, MetroPCS's terms and conditions provide information to consumers regarding the potential exclusion of certain numbers from the flat-rate calling plan, and customers can use a live search service to determine whether particular numbers are subject to the additional charge. Accordingly, I find that MetroPCS's alternative payment mechanism as described in the record is not in violation of the Call Blocking Order.

**B.  Sections 201 and 202 of the Communications Act**

Section 201 of the Communications Act requires that carrier charges, practices, classifications, and regulations be just and reasonable.  47 U.S.C. § 201(b).  Section 202 of the Act states that it is unlawful for a telecommunications carrier to engage in "unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services."  47 U.S.C. § 202(a).  MetroPCS seeks a declaration that its alternative payment mechanism and its practice of designating certain numbers as "Excessive Cost Numbers" do not violate §§ 201 and 202 of the Act.

*California Catalog*, while not dispositive on the issue of jurisdiction, does guide this court's decision regarding §§ 201 and 202.  *California Catalog* makes clear that a court should not "fill in the analytical gap" where the FCC has not made a determination regarding § 201(b).  *California Catalog*, 594 F.3d at 1158.  For the reasons stated above, the FCC has provided sufficient guidance as to the scope of its Call Blocking Order for me to conclude that MetroPCS's actions do not violate §§ 201 and 202 of the Act to the extent that those sections are alleged to be violated by virtue of a violation of the Call Blocking Order.  However, the fact that the alternative payment mechanism does not violate the Call Blocking Order does not *ipso facto* mean that the FCC might not otherwise find the requirement of the mechanism to be "unjust or unreasonable discrimination."  Therefore, for me to make a declaratory ruling on the issue would "put interpretation of a finely-tuned regulatory scheme squarely in the hands of private parties and some 700 federal district judges, instead of in the hands of the Commission."  *Id.* (quoting *Greene v. Sprint Commc'ns*, 340 F.3d 1047, 1053 (9th Cir. 2003)) (alteration and internal quotation marks omitted).  Therefore, I decline to decide and will dismiss MetroPCS's claim for declaratory judgment that its alternative payment mechanism and its practice of designating

certain numbers as "Excessive Cost Numbers" do not violate §§ 201 and 202 of the Communications Act.

### C.  Legality of CVL's Contract with Great Lakes

MetroPCS also requests a declaration that it need not deliver traffic to uncertificated LEC Great Lakes because CVL's contract with Great Lakes is illegal.  (Mot. Summ. J. at 31.) Although Great Lakes is not formally a party, it is represented by the same counsel that represents CVL in this action.  Further, its interests with CVL clearly coincide.  Nevertheless, in light of the fact that the Final Order recently issued by the Iowa Utilities Board keeps intact Great Lakes' certification, I will decline to decide this issue as well.

A separate order effecting the rulings made in this memorandum is being entered herewith.


May 24, 2012                                                                    /s/
Date                                                           J. Frederick Motz
                                                               United States District Judge